1  Debra I. Grassgreen (CA Bar No. 169978)
   Jason H. Rosell (CA Bar No. 269126)
2  Pachulski Stang Ziehl & Jones LLP
3  150 California Street, 15th Floor
   San Francisco, CA 94111
4  Telephone:   (415) 263-7000
   Facsimile:   (415) 263-7010
5  E-mail:  dgrassgreen@pszjlaw.com
            jrosell@pszjlaw.com
6
7  Counsel to the Foreign Representatives

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| In re: | Case No. 16-_____ (__) |
|---|---|
| APVO Corporation, | Chapter 15 |
| Debtor in a Foreign Proceeding. | **MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING** |

Thévenot Perdereau Manière El Baze ("Thévenot") and Renier Lemmens, in their capacity as the foreign representatives (the "Foreign Representatives") of the above-captioned debtor ("APVO" or the "Debtor"), a company in a *redressement judiciaire* (a judicial reorganization proceeding) under French law (the "French Proceeding") currently pending before the *Tribunal de Commerce de Paris*, France (the "French Court"), hereby submit this memorandum of law in support of their *Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "Petition"), filed concurrently herewith.

**PRELIMINARY STATEMENT**

APVO is the wholly owned subsidiary of Viadeo SA ("Viadeo"), a French company that owns and operates an online business social network, similar to LinkedIn®, primarily focused on the French market. APVO's primary asset is a database (the "Database") used to run Viadeo's online business social network (www.viadeo.com). APVO is a California corporation that maintains a small office in San Francisco, California. The Database supports Viadeo's 11 million members and is primarily hosted by Amazon Web Services in California and Virginia.

APVO has three directors, each primarily located in France, and four officers, also primarily located in France. However, APVO only has one paid employee, Thierry Lunati, its Chief Technology Officer, who works from Viadeo's headquarters in France. Accordingly, all decision making and administrative support for APVO takes place at Viadeo's headquarters in Paris, France.

Viadeo entered into a French "conciliation proceeding" (an amicable, confidential, and court-supervised proceeding for distressed entities) in September 2016 in order to negotiate a prepack sale of Viadeo's assets. Viadeo received several offers for the purchase of Viadeo's assets, including APVO's assets, since the Database is crucial to Viadeo's operations.

On November 22 and 24, 2016, following the conciliation proceeding, Viadeo and APVO petitioned the French Court to open formal court-supervised reorganization proceedings (*redressement judiciaire*) for the purpose of approving the sale of their assets. On November 29, 2016, the French Court opened *redressement judiciaire* for Viadeo and APVO. A true and correct copy of the order opening the French Proceeding for APVO and appointing the Foreign Representatives is attached to the Petition (the "Redressement Order").

Pursuant to the Redressement Order, the French Court will consider bids for the purchase of substantially all of APVO's assets on December 19, 2016. APVO seeks recognition of the French Proceeding (on an expedited basis) as a first step toward having the eventual order approving the sale issued by the French Court recognized in the United States.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This case has been properly commenced pursuant to section 1504 of Title 11 of the United States Code (the "Bankruptcy Code") by the filing of the Petition pursuant to section 1515 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

**FACTUAL BACKGROUND**

The Court is respectfully referred to (i) the Petition, (ii) the *Declaration of Caroline Texier in Support of the Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "Texier Declaration"), (iii) the *Declaration of Renier Lemmens in Support of (i) Chapter 15 Petition for Recognition of a Foreign Main Proceeding; and (ii) Ex Parte Motion for Order Shortening Time on Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "Lemmens Declaration"), and (iv) the *Declaration of Christophe Thévenot in Support of (i) Chapter 15 Petition for Recognition of a Foreign Main Proceeding; and (ii) Ex Parte Motion for Order Shortening Time on Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "Thévenot Declaration"), each filed contemporaneously herewith and containing the facts relied on in this Memorandum of Law. The Texier Declaration, Lemmens Declaration, and the Thévenot Declaration are incorporated herein by reference.

**DISCUSSION**

The French Proceeding should be recognized as a foreign main proceeding and the Redressement Order should be recognized and enforced because this chapter 15 case was properly commenced by the duly authorized foreign representatives, the French Proceeding qualifies as a foreign proceeding under section 101(23) of the Bankruptcy Code, and the French Proceeding is pending in the country where APVO has its center of main interests.

**A. This Case Is Proper Under Chapter 15**

Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. 11 U.S.C. § 1501(b)(1). APVO's case is proper under chapter 15 because (i) this case concerns a "foreign proceeding," (ii) this case was commenced by the Foreign Representatives, the duly authorized "foreign representatives," (iii) the Petition and all required supporting documentation were properly filed, and (iv) the relief sought by the Petition is consistent with the objectives of chapter 15. *See* 11 U.S.C. §§ 101 and 1515.

The requirements for recognition of a foreign proceeding are set forth in section 1517(a) of the Bankruptcy Code. Section 1517(a) provides:

> (a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if —
>
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). As set forth below, each requirement for recognition prescribed by section 1517(a) has been satisfied.

### B. The French Proceeding Is a "Foreign Proceeding"

Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As discussed in the Texier Declaration, the French Proceeding is a judicial proceeding brought under the *Code de Commerce* (the "French Commercial Code") under the supervision of the French Court and is recognized as an insolvency proceeding under the laws of the European Union. Texier Declaration, ¶¶ 8-25; *See In re Thomson S.A.*, Case No. 09-17355 (BRL) (Bankr. D. Del. January 14, 2010) [Docket No. 13] (recognizing a *sauvegarde* proceeding as a foreign main proceeding). The French Commercial Code provides for a controlled reorganization procedure (*redressement judiciare*) designed to enable insolvent companies to restructure their liabilities and continue as a going concern or pursue a sale of substantially all of its assets for the highest and best bid, as determined by the French Court.

### 1. General Background of Applicable French Insolvency Law

In general, French insolvency law provides for several types of proceedings: two court-assisted proceedings (the *mandat ad hoc* and conciliation proceedings) and four court-controlled proceedings (*redressement judiciare* or judicial reorganization, judicial liquidation, *sauvegarde*, and accelerated *sauvegarde*). The conciliation proceeding and *redressement judiciare* are applicable to APVO and are briefly described herein.

The conciliation proceeding is a private and informal proceeding, voluntarily initiated by a company, that facilitates negotiations between a company and its creditors. The goal of the conciliation proceeding is to reach a consensual restructuring agreement (a "conciliation agreement") among all of a company's stakeholders (including shareholders). This proceeding is conducted under the supervision of a coniliator (a court-appointed mediator).

As stated above, a conciliation proceeding is a private proceeding. However, the existence of a conciliation proceeding can become public if a company seeks approval of the conciliation agreement (although the contents of the conciliation agreement remain confidential).

Unlike the court-assisted proceedings, the various court-controlled proceedings are public and share certain features: (i) an automatic stay prohibits creditors from commencing legal actions against the company; (ii) creditors are required to file proofs of claim; and (iii) postpetition debts are given payment priority. In a judicial reorganization proceeding, which applies to insolvent debtors, the court has discretion to replace management or leave management in place, subject to the supervision of a cour-appointed trustee. In addition, a judicial reorganization proceeding allows a court to order a sale of the business at the request of the court-appointed trustee.

In general, French restructuring cases generally begin with a court-assisted proceeding (such as a conciliation proceeding) and are then implemented through a court-controlled proceeding (such as a *redressement judiciare*). This is the path Viadeo and APVO pursued. The objective of the Viadeo conciliation proceeding was to negotiate a sale of the company's assets as a going concern and to implement a sale in a *redressement judiciare*. This process is similar to the process in the

5

MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

Case: 16-31309    Doc# 2    Filed: 12/06/16    Entered: 12/06/16 14:28:26    Page 5 of 12

United States of marketing a company for sale prepetition and then commencing a chapter 11 case to effectuate the sale.

### 2. The *Redressement Judiciare*

As detailed in the Texier Declaration, a French reorganization proceeding must be commenced where a company is insolvent. The company's legal representative is required to file a *déclaration de cessation des paiements* (declaration of insolvency) with the court within 45 days as from the date of insolvency. APVO filed a declaration of insolvency with the clerk of the French Court on November 24, 2016. The French Court determined the date of insolvency for APVO was August 24, 2016 (the date when an application for conciliation was filed by Viadeo).

The French Court decides whether a debtor is eligible for a *redressement judiciare*, *i.e.*, whether the debtor is insolvent and reorganization seems possible, either through a plan of reorganization or assignment plan. A *jugement d'ouverture* (court opening order) is issued publicly and a notice is published in the *BODACC*, the French official legal gazette. Upon the issuance of an opening order, an automatic stay arises to prohibit payment of prepetition debt, and to enjoin creditors from commencing or continuing with legal actions against the debtor. APVO's *redressement judiciare* was commenced by filing a petition on November 24, 2016 with the French Court. On November 29, 2016, the French Court entered the Redressement Order, officially opening APVO's *redressement judiciare*.

After a reorganization proceeding is opened, a *juge-commissaire*, or day-to-day judge, is appointed to oversee the proceeding. Thereafter, the assets and affairs of the company are subject to the supervision of the court and the *juge-commissaire*. For example, the *juge-commissaire* must authorize any decision to sell the company's assets outside the ordinary course of business. The French Court appointed Louis Martin as APVO's *juge-commissaire*.

One or more *administrateur*s *judiciaire*s, or trustees, are appointed either (i) to assist a debtor's management (*i.e.*, management and the trustee need to act jointly) or (ii) to represent a debtor (*i.e.*, only the trustee is authorized to act on behalf of the debtor). These trustees are

6

professionals with a legal or financial background who are regularly employed in this capacity. The scope of their duties is decided by the court. Generally, however, their function is to report to the court in the event there is an issue requiring the court's input. The trustees also assist in negotiating with creditors, drafting a plan of reorganization with the assistance of management, or organizing the sale of the debtor's business as a going concern.

In addition, one or more *mandataires judiciaires* are appointed in a French reorganization proceeding. The *mandataire judiciaire* is the creditors' representative, entitled to act in the name of and on behalf of all creditors. The *mandataire judiciaire* is also a professional with a legal or financial background who is regularly employed in this capacity.

Pursuant to the Redressement Order, the French Court appointed Thévenot as a trustee to assist APVO's management. In other words, Thévenot and APVO's management (*i.e.*, Mr. Lemmens, APVO's President and Chief Executive Officer) must act jointly and agree to any course of action outside the ordinary course of business. In addition, the French Court appointed Valérie Leloup-Thomas as APVO's creditors' representative.

The provisions of the French Commercial Code applicable to *redressement judiciare* proceedings encompass many of the same concepts found in chapter 11 of the Bankruptcy Code. For example, during a *redressement judiciare*, the debtor is prohibited from paying prepetition claims, except to employees and to certain secured creditors, as approved by the French Court. In addition, the debtor's contracts remain in place and must be honored regardless of any *ipso facto* clause. However, a contract counterparty may send a formal notice to the trustee requesting that the trustee decide within one month whether to assume or reject the contract. In addition, as in a chapter 11 proceeding, creditors are solicited to file proofs of claim and an automatic stay enjoins creditors from commencing or continuing legal actions against the debtor.

For the reasons set forth above, the French Proceeding qualifies as a "foreign proceeding" under the Bankruptcy Code.

### C. Thévenot and Mr. Lemmens Are the "Foreign Representatives"

Section 101(24) of the Bankruptcy Code provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). Pursuant to the Redressement Order, the French Court appointed "Thévenot-Perdereau-Manière-El Baze represented by Christophe Thévenot . . . as the court-ordered receiver, whose assignment shall include assisting [APVO] where any measures relating to management are concerned, in addition to the powers granted to him by law." In addition, Mr. Lemmens is the President and Chief Executive Officer of APVO. As discussed above, Thévenot and Mr. Lemmens are required to act jointly on matters outside the ordinary course of business. As such, together they are the Foreign Representatives, and together they have filed the Petition. Moreover, Thévenot, as a *Société civile professionanelle* or professional civil partnership, is a "person" as defined in section 101(41) of the Bankruptcy Code. 11 U.S.C. § 101(41). Accordingly, Thévenot and Mr. Lemmens, together, are the "foreign representatives" of APVO, as defined in the Bankruptcy Code.

### D. The Foreign Representatives Properly Filed This Case

This case was duly and properly commenced as required by sections 1504 and 1509(a) of the Bankruptcy Code, by the filing of the Petition in accordance with section 1515(a) of the Bankruptcy Code, which was accompanied by all documents and information required by sections 1515(b) and (c) of the Bankruptcy Code.[1] *See In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *17 (Bankr. D. Del. Apr. 30, 2014) ("The final requirement for recognition under § 1517 is that the petition for recognition meets the procedural requirements of [section] 1515"), *aff'd*, 538 B.R. 692 (D. Del. 2015); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 334 (Bankr. D. Del.

---

[1] As set forth above, in satisfaction of section 1515(b), the Foreign Representatives have attached to the Petition, a copy of the Redressement Order (original and translated versions). Furthermore, in satisfaction of section 1515(c), the Foreign Representatives have attached to the Petition the *Statement Pursuant to 11 U.S.C. § 1515(c) and Bankruptcy Rule 1007(a)(4)*, which identifies the French Proceeding as the only foreign insolvency proceeding pending with respect to the Debtor.

8

2010) (same), *aff'd*, 728 F.3d 301 (3d Cir. 2013); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding pursuant to section 1515 of the Bankruptcy Code"), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Because the Foreign Representatives have satisfied the requirements set forth in section 1515 of the Bankruptcy Code, this chapter 15 case has been properly commenced.

### E. The French Proceeding is a Foreign Main Proceeding

The Court should grant recognition of the French Proceeding as a "foreign main proceeding," as defined in the Bankruptcy Code. A foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. 11 U.S.C. §§ 502(4), 1517(b)(1). Many factors weigh into the center of main interests analysis, including "the location of the debtor's headquarters; the location of those who actually manage the debtor; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *16 (Bankr. D. Del. Apr. 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013); *In re Bear Stearns*, 374 B.R. at 128 (citing *In re SPhinX, Ltd.*, 351 B.R. at 117); *see also In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of main interests is the "place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"). Further, courts have equated a company's principal place of business to its center of its main interests. *See In re Bear Sterns*, 374 B.R. at 129.

Pursuant to the Redressement Order, the French Court has found that APVO is registered to do business in France, APVO's main establishment in France is Viadeo's headquarters in Paris, and, accordingly, the French Court has jurisdiction over APVO. As set forth in the Lemmens Declaration, (i) APVO's officers and directors are primarily located in France, (ii) APVO's

accounting functions are performed in France, (iii) APVO's customers are primarily located in France, and (iv) APVO's largest creditor is its holding company, Viadeo, which is a French company headquarted in Paris. In addition, as set forth in the Texier Declaration, the French tax administration has determined that APVO has an establishment in France and is subject to French taxation. With only one paid employee, its Chief Technology Officer, all corporate-level decision-making and corporate administrative functions affecting APVO, including decisions on capital expenditures and business development initiatives, are centralized in the Paris office of its parent company, Viadeo. Finally the Foreign Representatives are both located in France. Although section 1516(c) of the Bankruptcy Code creates a presumption that a debtor's registered office is its center of main interests, the facts stated above rebut this presumption. 11 U.S.C § 1516(c); *In re Basis Yield Alpha Fund (Master)*, 381 B.R 37, 48 (Bankr. S.D.N.Y. 2008). In these circumstances, Paris, France should be found to be the center of APVO's main interests. Accordingly, given that the French Proceeding is pending in Paris, France, the French Proceeding should be recognized as a foreign main proceeding.

### F. In the Alternative, the French Proceeding Should be Recognized as a Foreign Nonmain Proceeding

If the Court for some reason concludes that the French Proceeding should not be recognized as a foreign main proceeding, the Foreign Representatives request that this Court find that the proceeding is a foreign nonmain proceeding under section 1502(5) of the Bankruptcy Code. Section 1517(a) provides that "an order recognizing a foreign proceeding shall be entered if . . . such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." 11 U.S.C. § 1517(a)(1). Section 1502(5) defines "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5).

To qualify as a foreign nonmain proceeding, a debtor must have an establishment in the country in which the foreign proceeding is pending. *Id*. An "establishment" is defined in section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity."

11 U.S.C. § 1502(2). While the Bankruptcy Code does not define "nontransitory economic activity," the place in which such activity is conducted has been interpreted to mean "a local place of business." *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 914-15 (Bankr. S.D. Fla. 2010) (citations omitted). In order to have an "establishment" for the purposes of this statute, "the debtor must conduct business in that country." *Id.* at 915. Whether the debtor has an "establishment" in a country is also determined at the time of the filing of the chapter 15 petition. *Id.*

As discussed above, daily nontransitory economic activity relating to APVO is currently being carried out in France. The French Court and the French tax administration have already found that APVO has an establishment in France and is registered to do business in France. In addition, all decision making takes place in France and all back office support is provided by APVO's parent company, headquartered in Paris. Thus, APVO has a "local place of business" and an "establishment" in France. As a result, at a minimum, the French Proceeding should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) if the Court denies recognition of the French Proceeding as a foreign main proceeding.

### G. Recognition of the French Proceeding Would Not Be Manifestly Contrary to U.S. Public Policy

Section 1517(a) of the Bankruptcy Code notes that an order recognizing a foreign proceeding is subject to section 1506, which provides: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

The public policy of the United States would not be contravened by granting the relief sought. Indeed, recognizing the French Proceeding as a foreign main proceeding would advance an express objection of chapter 15 – the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including APVO, and the protection and maximization of its assets. *See* 11 U.S.C. § 1501(a). Chapter 15 will materially aid the Foreign Representatives' efforts to sell APVO's assets located in the United States as a going concern for the benefit of all of APVO's stakeholders.

11

MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

Case: 16-31309 Doc# 2 Filed: 12/06/16 Entered: 12/06/16 14:28:26 Page 11 of 12

## CONCLUSION

For the foregoing reasons, the Foreign Representatives respectfully request that this Court enter an order (i) recognizing the French Proceeding as a foreign main proceeding; (ii) recognizing the Foreign Representatives as foreign representatives of the French Proceeding; and (iii) granting such other relief as may be just and proper.

Dated: December 6, 2016            PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Jason H. Rosell*
   Debra I. Grassgreen
   Jason H. Rosell

   Counsel to the Foreign Representatives