Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

Counsel to the Foreign Representatives

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

APVO Corporation,

Debtor in a Foreign Proceeding.

Case No. 16-31309 (DM)

Chapter 15

**DECLARATION OF CAROLINE TEXIER IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

Caroline Texier, who is a partner of the law firm Gide Loyrette Nouel ("Gide") and a lawyer admitted to practice law in Paris and New York, but practicing only in France, declares under penalty of perjury under the laws of the United States of America:

1. Gide represents APVO Corporation (the "Debtor" or "APVO"), a debtor in a *redressement judiciaire* (a judicial reorganization proceeding) under French law (the "French Proceeding"), currently pending before the *Tribunal de Commerce de Paris* (Commercial Court of Paris), France (the "French Court"). Gide also represents (a) Renier Lemmens, the legal representative of APVO, and (b) APVO's duly appointed trustee, Thévenot Perdereau Manière El Baze ("Thévenot"). Mr. Lemmens and Thévenot act together as APVO's foreign representatives in this chapter 15 case (together, the "Foreign Representatives").

2. I have been engaged in the practice of French law since 2003 and have extensive experience in restructuring and insolvency. I have been a partner at Gide since 2014 and before that I was a partner in another international law firm. I participated in major French and international restructurings, including Eurotunnel and Technicolor. I am fully familiar with *redressement*

*judiciaire* (judicial reorganization proceedings) established by the *Code de Commerce* (the "French Commercial Code"). I submit this declaration (i) in support of the *Chapter 15 Petition for Recognition of a Foreign Main Proceeding*, filed concurrently herewith; (ii) in order to describe for the Court the nature of a *redressement judiciaire* under French law; and (iii) to advise the Court as to the current status of the French Proceeding.

### A. General Background of Applicable French Insolvency Law

3. In general, French insolvency law provides for several types of proceedings: two court-assisted proceedings (the *mandat ad hoc* and conciliation proceedings) and four court-controlled proceedings (*redressement judiciaire* or judicial reorganization, judicial liquidation, *sauvegarde*, and accelerated *sauvegarde*). The conciliation proceeding and judicial reorganization (*redressement judiciare*) are applicable to APVO and are briefly described herein.

4. The conciliation proceeding is a private and informal proceeding, voluntarily initiated by a company, that facilitates negotiations between a company and its creditors. The goal of the conciliation proceeding is to reach a consensual restructuring agreement (a "conciliation agreement") among all of a company's stakeholders (including shareholders). This proceeding is conducted under the supervision of a conciliator (a court-appointed mediator).

5. As stated above, a conciliation proceeding is a private proceeding. However, the existence of a conciliation proceeding can become public if a company seeks approval of the conciliation agreement (although the contents of the conciliation agreement remain confidential).

6. Unlike the court-assisted proceedings, the various court-controlled proceedings are public and share certain features: (i) an automatic stay prohibits creditors from commencing legal actions against the company; (ii) creditors are required to file proofs of claim; and (iii) postpetition debts are given payment priority. In a *redressement judiciaire*, which applies to insolvent debtors, the court has discretion to replace management or leave management in place, subject to the supervision of a court-appointed trustee. In addition, a *redressement judiciaire* allows a court to order a sale of the business at the request of the court-appointed trustee.

7.      In general, French restructuring cases generally begin with a court-assisted proceeding (such as a conciliation proceeding) and are then implemented through a court-controlled proceeding (such as a *redressement judiciaire*). This is the path Viadeo and APVO pursued. I understand that the objective of the Viadeo conciliation proceeding was to negotiate a sale of the company's assets as a going concern and to implement a sale in a *redressement judiciaire*. I further understand that this process is similar to the process in the United States of marketing a company for sale prepetition and then commencing a chapter 11 case to effectuate the sale.

### B.      The *Redressement Judiciare*

8.      A *redressement judiciaire* is a proceeding under French insolvency law intended to facilitate the reorganization of a business, which is insolvent (*i.e.*, that is unable to pay its debts as they become due with its available assets), either through a plan of reorganization (*i.e.*, restructuring of debts, debt to equity swap, debt reduction, etc.) or an assignment plan (*i.e.*, a sale of the business as a going concern), in order that the business may be continued, the employment of its personnel maintained, and its liabilities restructured.

9.      Pursuant to Article R. 600-1 of the French Commercial Code, the *redressement judiciaire* is opened by the court within whose area of jurisdiction the debtor's registered office is located. Where the registered office is not located in France, the court where the debtor has the center of its main interests in France has jurisdiction to open the *redressement judiciaire*.

10.     Provisions for *redressement judiciaire* are made under Articles L. 630-1 *et seq.* of the French Commercial Code. The *redressement judiciaire* is recognized as an insolvency proceeding under the law of the European Union. *See* Council Regulations (EC) No. 1346/2000, dated May 29, 2000, on Insolvency Proceedings (as modified) and the recasting Regulation No. 2015/848, dated May 20, 2015, on Insolvency Proceedings.

11.     A *redressement judiciaire* must be commenced when a company is insolvent. Specifically, the company's legal representative must file a *déclaration de cessation des paiements*

3

(declaration of insolvency) with the court within 45 days from the date of insolvency. It may also be commenced upon summons by a creditor or at the request of the public prosecutor.

12. Based upon the evidence presented in the petition or in the summons, the court decides whether the debtor is eligible for *redressement judiciaire* (*i.e.*, whether the debtor is insolvent and reorganization seems possible, either through a plan of reorganization or an assignment plan). The *jugement d'ouverture* (court opening order) is issued publicly and a notice is published into the *BODACC,* the French official legal gazette.

13. Upon the issuance of the opening order, an automatic stay arises to prohibit payment of prepetition debt, and to enjoin creditors from commencing or continuing with legal actions against the debtor.

14. After a *redressement judiciaire* is opened, a *juge-commissaire*, or day-to-day judge, is appointed to oversee the proceeding. Thereafter, the assets and affairs of the company are subject to the supervision of the court and the *juge-commissaire*. For instance, the *juge-commissaire* must authorize any sale of the debtor's assets outside the ordinary course of business, or the granting of any security interest in the debtor's assets.

15. In addition, one or more *administrateurs judiciaires*, or trustees, are appointed either to (i) co-assist the Debtor's management (*i.e.*, the legal representative and the trustee need to act jointly) or (ii) to represent the Debtor (*i.e.*, management's authority to act is removed and the trustee acts alone). These trustees are professionals with a legal or financial background who are regularly employed in this capacity. The scope of their duties is decided by the court. Generally, however, their function is to report to the court in the event there is an issue requiring the court's input. The trustees also assist in negotiating with creditors, drafting the reorganization plan with the assistance of the debtor's management, and organizing a sale of the debtor's business as a going concern.

16. In addition, one or more *mandataires judiciaires* are appointed. The *mandataire judiciaire* is the creditors' representative, entitled to act in the name of and on behalf of all creditors.

4

DECLARATION OF CAROLINE TEXIER IN SUPPORT OF
CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

The *mandataire judiciaire* is also a professional with a legal or financial background who is regularly employed in this capacity.

17. Certain provisions of a *redressement judiciaire* are similar to those of a chapter 11 case in the United States. During the *redressement judiciaire*, the debtor is prohibited from paying prepetition claims, except to employees and to certain secured creditors, as approved by the judge. The debtor's contracts remain in place and must be honored regardless of any *ipso facto* clause. However, a contract counterparty may send a formal notice to the trustee requesting that the trustee decide within one month whether to adopt or abandon the contract. Should the trustee not respond within one month, the contract is considered terminated.

18. In addition, creditors are solicited to file claims. Within 15 days following the opening order, the creditors' representative will send a notice to known affected creditors stating that they need to file their claims. Creditors must file written claims within two months (four months for creditors domiciled abroad) of the publication of the opening order. Creditors may also ratify the proof of claims filed by the debtor on their behalf at the opening of the *redressement judiciaire*.

19. Thereafter, with the assistance of the trustee, the debtor drafts a reorganization plan. Creditors are consulted on this draft plan by the creditors' representative.

20. After consulting the creditors, the plan of reorganization is submitted to the court, which must verify that its terms are fair and preserve the interests of affected creditors. Before reaching any conclusion, the court will hear the debtor, the trustee, the creditors' representative and representatives of the employees.

21. If the Court concludes that the plan meets the relevant legal requirements, it will approve the plan, which then becomes binding upon all affected creditors.

22. If no reorganization plan is presented to the court or the court finds it unsatisfactory, the *redressement judiciaire* may also end up with the approval of the sale of the business as a going concern by the court. Indeed, as the *redressement judiciaire* is public, any third party interested in taking over part or whole of the business may submit purchase offers to the trustee, on its own

5

initiative as from the opening of the proceeding or upon solicitation by the trustee. In order for an offer to be considered, the purchase offer must provide for the preservation of the business as a going concern.

23. The sale of the business may also have been previously negotiated during a pre-insolvency and confidential proceeding called "conciliation," where a trustee is appointed by the court and the trustee is entrusted with working with the debtor's management to prepare the business to be sold.

24. The court then hears each bidder, as well as the public prosecutor, the debtor, the trustee, and the creditors' representative before approval of the assignment plan (*i.e.*, before approval of the sale of the company).

25. If no reorganization or assignment plan is approved, the Court shall convert the *redressement judiciaire* into a winding-up proceeding (*i.e.*, a liquidation).

### C. APVO's Case

26. APVO is a wholly owned subsidiary of Viadeo SA ("<u>Viadeo</u>"), a French company. Viadeo entered into a conciliation proceeding in September 2016 in order to negotiate a prepack sale of Viadeo's assets. The purchase offers received in this context concern assets of both Viadeo and APVO, since APVO owns a database that is used to run Viadeo's online business social network.

27. Viadeo commenced a *redressement judiciaire* by filing a petition on November 22, 2016 with the French Court. APVO commenced a *redressement judiciaire* by filing a petition on November 24, 2016 with the French Court.

28. The French Court was deemed to have jurisdiction over APVO's *redressement judiciaire* because APVO maintains a presence in Paris (30 avenue de la Victoire - 75009 Paris) and is registered with Paris Commercial Court's *Registre du Commerce et des Sociétés* (Registry of Trade and Companies) under number 819 633 785. APVO has three directors and four officers, all of which are primarily located in France. I have spoken with APVO's President and Chief Executive Officer and understand that (i) APVO's accounting functions are performed in France, (ii)

6

APVO's primary business activities are performed in France, (iii) APVO's clients are primarily located in France, and (iv) APVO's main creditor, its holding company Viadeo, is a French corporation headquartered in Paris.

29. Furthermore, following a tax audit in France, the French tax administration has determined that APVO has had an establishment in France since 2012.

30. By order dated November 29, 2016, the French court opened a *redressement judiciaire* for APVO and Viadeo. True and correct copies of the order (original and translated) opening the APVO proceeding is attached to the Petition (the "Redressement Order"). The Redressement Order became effective when issued.

31. In the Redressement Order, the Court appointed (a) Louis Martin as the *juge-commissaire* (day-to-day judge) of APVO; (b) SCP[1] Thévenot Perdereau Manière El Baze, acting through *Maître* Christophe Thévenot, as the *administrateur judiciare* (*i.e.*, the court-appointed trustee); and (c) SELAFA MJA, acting through *Maître* Valérie Leloup-Thomas, as *mandataire judiciaire* (*i.e.*, the creditors' representative).

32. Under corporate law, Renier Lemmens, as the President and Chief Executive Officer of APVO, is the legal representative of APVO and, together with the trustee, is representing APVO as to third parties. Pursuant to Article L. 622-1 of the French commercial code and the Redressement Order, the management of APVO, including the management of any legal actions, is controlled by its legal representative, with the assistance of the trustee. Accordingly, TPM and Mr. Lemmens have authority to commence this chapter 15 case.

33. The French Court will consider bids for the purchase of Viadeo's and APVO's assets as a going concern on December 19, 2016 (the "Bid Hearing"). Following the Bid Hearing, the French Court may authorize the sale as early as December 23, 2016. I understand that potential purchasers have conditioned their willingness to submit final bids at the Bid Hearing on a United

---

[1] SCP is a *Société civile professionanelle* or professional civil partnership, similar to a limited liability partnership in the United States.

7

DOCS_SF:92705.4
Case: 16-31309    Doc# 6    Filed: 12/06/16    Entered: 12/06/16 14:53:58    Page 7 of 9

States Bankruptcy Court recognizing the French Proceeding prior to the Bid Hearing. In France, an offer to purchase assets cannot have any conditions to closing. Accordingly, if the French Proceeding is not recognized in the United States prior to the Bid Hearing, it is likely that no bidder will waive the condition precedent at the Bid Hearing, effectively preventing any sale of the business as a going concern. If there are no unconditional bids at the Bid Hearing, APVO and Viadeo will likely be liquidated, resulting in the immediate layoff of all employees at Viadeo (139 employees) and APVO (1 employee).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

*[Remainder of page intentionally left blank]*

Executed on December 6, 2016 in Paris, France.

_____
Caroline Texier

9

DECLARATION OF CAROLINE TEXIER IN SUPPORT OF
CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

DOCS_SF:92705.4

Executed on December 6, 2016 in Paris, France.

_____
Caroline Texier

DECLARATION OF CAROLINE TEXIER IN SUPPORT OF
CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

DOCS_SF:92705.4

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
San Francisco, California

Case: 16-31309   Doc# 6   Filed: 12/06/16   Entered: 12/06/16 14:53:58   Page 9 of 9